Loking, J.,
dissenting:
I dissent from the opinion read because I think that the act of 26th February, 1863, (10 Stat. 170,) is applicable only at the treasury, and has no reference to litigation here.
It is certain that under this act of 1853, an assignment made as the act prescribes, viz : by a capable and understanding assignor, in the presence of two witnesses and certified by a magistrate, and made after the claim has been allowed at the treasury, the amount due ascertained and a warrant for its payment issued, is the only assigment of a claim that an officer of the treasury can admit or recognize, and that if he admits any other he violates the statute. And if the act of 1853 applies to this court, then this court cannot lawfully admit or recognize any other assignment than one made as the act prescribes; and if it should admit or recognize any other, then this court would violate the statute. The act is express that any other 'assignment than such as *72 it describes “ shall he utterly null and void,” so that it could eonvey no right and create no equity, but would be merely an offence implicating all aiding and abetting it. If, therefore, the court should act upon such “null and void” assignment, by permitting the assignee to sue in the name of the assignor, or the assignor to sue for and in aid of theassignee, or should render a judgment or grant a certificate, according •to such suit, or should directly or indirectly enforce, sanction, or recognize the title of an assignee under such illegal assignment, the court would be guilty of a maladministration of law proved by its records.
And it is no answer to this to say that courts of common law permit an assignee to sue in the name of the assignor, or that courts of equity permit an assignee to sue in his own name, because no statute forbids them so to do. But no court of law or equity ever acted upon or sanctioned an assignment declared “ absolutely null and void ” by a statute it admitted to be obligatory upon it.
It is clear that if the statute of 1853 is applicable here it would confine this court, as it does the treasury, to assignments made as the statute prescribes. Then I think it is equally clear that such assignments could never be litigated here. For by the act every assignment is “ absolutely null and void,” unless it be of a claim allowed at the treasury and for the payment of which a warrant has issued. The necessary consequence is that there could be no assignment of anything more than the precise amount allowed at the treasury and ordered to be paid. The original owner of a claim could assign nothing more; the assignee could acquire nothing more. And then the only right of the assignee, under such assignment, would be to go to the treasury and get his money; and he could not, instead of doing so, come here and litigate the very claim for the payment of which he had a treasury warrant in his pocket; for, in such case, the United States would not be in default to him, for their obligation to him is not to go in search of him, but to pay him on his warrant when he presents it at the treasury. And if such assignee could come here we could give him nothing as good as his treasury warrant, for our judgment and certificate are not tantamount to that, but only the uncertain means of obtaining the same thing.
And if the provisions of the act of 1853 are practicable at the treasury and are impracticable here, then they show that the act was intended for the treasury and not for this court.
Claims against the United States are adjusted and settled at the treasury, but they are not litigated there and cannot be, while our duty is exclusively the litigation of claims. These' different duties do *73 not admit of tbe same rules; and they present entirely different subjects for legislation. And where statutes relate to different subjects no question of repeal can arise upon them, for like parallel lines they do not touch each other. They are not in pari materia, and cannot be construed together.
It is said the words of the statute of 1853, viz: “All transfers and assignments hereafter made,” &e., are general, hut it is the common rule of construction that the general words of a statute are to be confined to its subject; and it is also a rule of construction that the subject of a statute is denoted by its title, (3 W. 610, United States v. Palmer,) and the title of the act of 1853 is, “ An act to prevent frauds upon the treasury of the United States,” and it is thus applied to the treasury by its title, as well as by its provisions, which are applicable there and, I think, nowhere else. And our jurisdiction is not to be sought in a statute enacted for the treasury and before this court was created, and without reference to it, or to litigation anywhere; but it is to be sought in the acts establishing and organizing this court, and the language of these is as general as that of tbe act of 1853; and their purpose and policy are as broad as their language, for claims assigned are as proper a subject for judicial investigation as claims not assigned.
The act of 1855 (ch. 122,10 Stat. 612) is entitled “An act to establish a court for the investigation of claims against the United States,” and this denotes its subject to be the judicial investigation of such claims, and not merely the prevention of frauds in an executive department. Then its first section, which limits our jurisdiction, makes that of “ all claims” founded as it specifies ; and these words “ all claims” include all assigned claims just as much as all claims not assigned.
Then the twelfth section of the act of 1863, ch. 81, (11 Stat., 30) provides for the practical matters of procedure and of judgment here. It first requires that the petition should state all assignments of the claim or of any part thereof or interest therein, and also that no other assignments have been made than those specified. Thus it makes it sure that all equitable as well as legal interests should be produced to the court that it may protect them and the United States, according to our jurisdiction at law and equity. The section then proceeds and provides that to authorize the court to render a judgment, the record shall show the allegiance of “ the claimant, and the original and every prior ovmer thereof, where the claim has been assigned.” Thus the section specifies the requirements for, and makes an express and dis *74 tinct provision for, judgments bere, “ where, the claim has been, assigned,,” and, therefore, for the hearing and decision here of assigned claims.
And these full and precise directions as to assigned claims in the twelfth section of 1863, (ch. 92,) show that assigned claims were the object of direct attention and careful provision by the legislature. And they are to be referred to, and they construe the words “ all claims ” in the first section of the act of 1855, (ch. 122,) limiting our jurisdiction, for the two acts must be construed together; and then they make a system for this court complete in itself, by its provisions for claims assigned as well as for claims not assigned, and moreover for fraudulent claims. And it is not and cannot be claimed that there is anything in their titles, provisions, purpose, or policy that confines this court as the act of 1853 confines the officers of the treasury to assignments of claims allowed there and ordered to be paid, and thus removed from dispute and from litigation here.
For these reasons and others stated by me when the question was before the court, in the ease of Sines v. The United States, 1 C. Cls. R. 12, I am of opinion that the act of February 26,1853, is not applicable here, and therefore I think the demurrer not sustained on the ground on which it has been argued; and that as this is a court of equity as well as of law and has no forms, that this suit is well brought in the names of the claimants, the record showing their title. But as the assignment of Ooté annexed to the petition shows that he has a resulting interest, and by the rule in equity should be a party to the suit; and as I think the petition is defective in not averring that the claimants or Ooté have never given aid to the rebellion, which the statute of 1863, chapter 92, requires, beside the affidavit of allegiance, I think the case should be remanded to the docket, that the necessary parties and amendments may be made, and the United States be allowed an opportunity to traverse the amendments traversable.